UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARJORIE OGILVIE,<br><br>                      Plaintiff,<br>      v.<br><br>THRIFTY PAYLESS, INC., et al.<br><br>                     Defendants. | CASE NO. C18-0718JLR<br><br>ORDER DENYING DEFENDANT THRIFTY PAYLESS, INC.'S MOTION FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

Before the court is Defendant Thrifty Payless, Inc.'s ("Rite Aid") motion for summary judgment. (MSJ (Dkt. # 49).) Plaintiff Marjorie Ogilvie and Defendant Assa Abloy Entrance System US, Inc. ("Assa Abloy") both oppose the motion. (Am. Ogilvie Resp. (Dkt. # 55); Assa Abloy Resp. (Dkt. # 56).) Rite Aid replied separately to each opposition. (Assa Abloy Reply (Dkt. # 59); Ogilvie Reply (Dkt. # 63).) The court has considered the motions, the parties' submissions in support of and in opposition to the

ORDER - 1

1  motions, and the applicable law.  Being fully advised,[1] the court DENIES Rite Aid's
2  motion for summary judgment.

## II.  BACKGROUND

The court begins by laying out the factual and procedural backgrounds of the case.

**A.  Factual Background**

On the morning of August 29, 2015, Ms. Ogilvie was approaching a Rite Aid in Arlington, Washington ("the Store"), when the sidelite[2] of the Store's automatic door flung open and struck her in the head.  (Am. Ogilvie Resp., Ex. A ("Ogilvie Decl.") ¶¶ 1-2.)  Ms. Ogilvie fell backward, landing on the pavement, and sustained several injuries.  (*Id.* ¶¶ 3-4.)  The door in question was an automatic sliding door with a sidelite on each end.  (Martin Decl. (Dkt. # 50) ¶ 3.)  While the door does not normally open by swinging in or out, there is a breakaway mechanism that allows both the door and its sidelites to swing open in emergency circumstances.  (*Id.* ¶ 4.)

From August 1, 2013, to July 30, 2016, Rite Aid had a contract with Assa Abloy to perform general maintenance at the store and to respond to maintenance requests regarding the door.  (10/2/20 Lancaster Decl. (Dkt. # 51) ¶ 3, Ex. 2; Assa Abloy Resp. at 1-2.)  Assa Abloy would conduct planned maintenance once a year after Rite Aid issued a work order for that maintenance.  (Goldman Decl. (Dkt. # 57) ¶ 3, Ex. 2 ("Flock Dep.")

---

[1] No party requests oral argument (*see* MSJ at 1; Ogilvie Resp. at 1; Assa Abloy Resp. at 1), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Sidelites for automatic sliding doors are the glass panes on either side that the door slides behind when it opens in its normal fashion.  (*See* Goldman Decl. ¶ 11, Ex. 10.)

23:21-24:21).) Rite Aid contends that Assa Abloy had inspected the door on August 1, 2015, four weeks before the incident. (MSJ at 2; Martin Decl. ¶ 9.) Assa Abloy disagrees, and states that the last time it provided maintenance to the door was September 18, 2014. (Assa Abloy Resp. at 3; *see also* Flock Dep. 25:1-26:4.) During the September 18, 2014, maintenance visit, Assa Abloy discussed the door's daily safety checklist with Rite Aid. (Goldman Decl. ¶ 2, Ex. 1 ("Myers Dep.") at 20:15-21:2.) This daily safety checklist instructed Rite Aid to conduct a series of minimum safety checks on the door every day. (*Id.*; Goldman Decl. ¶ 6, Ex. 5 ("Daily Safety Checklist") at 3.)

The parties all agree that August 29, 2015, was a particularly windy day and that a gust of wind appears to have blown the sidelite into Ms. Ogilvie's head. (*See* MSJ at 2, 5; Am. Ogilvie Resp. at 1; Assa Abloy Resp. at 4.) Rite Aid contends that there is no evidence that any Store employees or representatives were on notice of the door swinging open unexpectedly on the day of the incident or any time prior. (MSJ at 2.) Assa Abloy, however, points to a Rite Aid work order submitted by Anita Tronson, the Store manager on duty at the time of the incident. (Goldman Decl. ¶ 9, Ex. 8 ("Work Order").) This order is time-stamped at 11:07 a.m., 35 minutes before the incident,[3] and states that the reporting employee "[s]aid that her front automatic doors pushed open from wind storm and will not stay shut now. [N]eeds emg service." (*Id.*; Goldman Decl., Ex. 10 (screenshots of video showing the incident occurring between 11:42 a.m. and 11:44 a.m.).) Ms. Tronson, however, has testified that before the incident involving Ms.

---

[3] The parties do not dispute that the incident occurred between 11:42 a.m. and 11:44 a.m.

1  Ogilvie, she neither observed the door blow open nor reported any issues with the door.

2  (Tronson Decl. (Dkt. # 61) ¶¶ 8-9.[4])

**B.  Procedural Background**

Ms. Ogilvie filed suit against Rite Aid in Snohomish County Superior Court on March 26, 2018.  (Compl. (Dkt. # 1-1).)  The case was removed to federal court on May 17, 2018.  (Not. of Removal (Dkt. # 1).)  On August 13, 2018, Ms. Ogilvie amended her complaint to include Assa Abloy as a defendant.  (Am. Compl. (Dkt. # 21).)  Ms. Ogilvie alleges that "Defendant Assa Abloy Entrance Systems designed and/or manufactured and/or installed or had installed the sliding glass door that injured" her, and that these three things "were done in a negligent and/or improper and/or grossly negligent manner." (*Id.* ¶¶ 6-7.)  She further alleges that she suffered injuries and incurred medical expenses "due to Defendants' negligence and premises liability" and that the Defendants are jointly and severally liable.  (*Id.* ¶ 8.)  Rite Aid moved for summary judgment on October 2, 2020.  (MSJ.)

### III.  ANALYSIS

The court lays out the appropriate legal standard before addressing Assa Abloy's motion to strike and the merits of Rite Aid's motion for summary judgment.

---

[4] Assa Abloy has moved to strike Ms. Tronson's declaration along with two others because Rite Aid filed the declarations with its reply.  (Mot. to Strike (Dkt. # 65).)  As discussed below, the court will consider this evidence.  (*See infra* § III.B.)

**A.     Legal Standard**

Summary judgment is appropriate if the evidence viewed in the light most favorable to the non-moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016).  A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323.  If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways:  (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

//

//

**B.      Motion to Strike**

Assa Abloy brings a motion to strike three declarations filed by Rite Aid with its reply.  (Mot. to Strike; *see also* Sack Decl. (Dkt. # 60); Tronson Decl.; 12/3/20 Lancaster Decl. (Dkt. # 62).)  In general, "[i]t is not acceptable legal practice to present new evidence or new argument in a reply brief."  *Roth v. BASF Corp.*, C07-0106MJP, 2008 WL 2148803, at \*3 (W.D. Wash. May 21, 2008); *see also United States v. Puerta*, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992) ("New arguments may not be introduced in a reply brief."); *Bridgham-Morrison v. Nat'l Gen. Assembly Co.*, C15-0927RAJ, 2015 WL 12712762, at \*2 (W.D. Wash. Nov. 16, 2015) ("For obvious reasons, new arguments and evidence presented for the first time on Reply . . . are generally waived or ignored.").  Additional evidence can be presented in support of a reply brief, however, where "[t]he Reply Brief addressed the same set of facts supplied in [respondent's] opposition to the motion but provides the full context to [respondent's] recitation of the facts."  *Terrell v. Contra Costa Cty.*, 232 F. App'x 626, 629 n.2 (9th Cir. 2007).  In other words, "[e]vidence submitted in direct response to evidence raised in the opposition is not 'new.'"  *Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, Case No. 14-CV-1191 JLS (KSC), 2017 WL 4700070, at \*3 n.3 (S.D. Cal. Oct. 19, 2017).  The Local Civil Rules expressly contemplate submitting additional evidence with a reply brief.  *See* Local Rules W.D. Wash. LCR 7(b)(3) ("The moving party may . . . file . . . a reply brief in support of the motion, together with any supporting material of the type described in subsection (1).").

1     Rite Aid's declarations all address its employees' potential awareness of the

2 danger posed by the door before Ms. Ogilvie arrived at the Store.  (*See generally* Sack

3 Decl.; Tronson Decl.; 12/3/20 Lancaster Decl.)  The court finds that these declarations

4 are submitted in direct response to the Work Order evidence raised in Assa Abloy's

5 opposition.  (*See* Assa Abloy Resp. at 5 (arguing the Work Order demonstrates Rite Aid

6 employees were on notice about the door opening unexpectedly by 11:07 a.m. at the

7 latest).)  Thus, Assa Abloy's motion to strike is denied.

8 **C.**     **A Genuine Dispute of Material Fact Exists**

9     Rite Aid asks the court to grant its motion for summary judgment because Ms.

10 Ogilvie alleges that the door was improperly designed, manufactured, or installed, and

11 there is no evidence in the record that Rite Aid did any of these three actions.  (MSJ at 3;

12 Assa Abloy Reply (Dkt. # 59) at 1-2.)  Ms. Ogilvie, however, brings her suit against Rite

13 Aid based on a theory of negligence and premises liability.  (*See* Am. Compl. ¶ 8

14 (alleging Ms. Ogilvie suffered injuries "due to [Rite Aid and Assa Abloy's] negligence

15 and premises liability," and that Defendants are jointly and severally liable).)  Rite Aid

16 lays out standards for both negligence and premises liability in its motion (MSJ at 4-5),

17 and argues that if Ms. Ogilvie "is to succeed in her action against Rite Aid, she must

18 prove that Rite Aid had actual or constructive knowledge that the front entrance doors

19 posed an unreasonable risk of harm to its invitees." (Ogilvie Reply at 3 (citing *Iwai v.*

20 *State, Employment Sec. Dep't*, 915 P.2d 1089, 1093 (Wash. 1996)).

21     The court agrees with Rite Aid that liability may exist if Ms. Ogilvie is able to

22 demonstrate that Rite Aid had notice of the potential danger posed by the door.

1 | Furthermore, the court finds that there is a genuine issue of material fact that goes
2 | directly to this potential liability.  Assa Abloy has provided a document that, on its face,
3 | suggests that a Rite Aid employee knew the door was being blown open by the wind and
4 | requested emergency servicing 35 minutes before the incident with Ms. Ogilvie.  (*See*
5 | Work Order (time stamped at 11:07 a.m. the morning of the incident).)  Rite Aid has
6 | provided the court with evidence that contradicts this.  (*See* Tronson Decl. (testifying that
7 | the employee listed on the Work Order did not submit any requests for emergency service
8 | before the incident).)  Rite Aid also promises that "given additional time, Rite Aid will be
9 | able to obtain information relevant to the nature and mode of entry of the work order at
10 | issue to further substantiate the testimony of its employees." (12/3/20 Lancaster Decl.
11 | ¶ 4.)

12 |      The court may not weigh competing evidence or decide if certain pieces of
13 | evidence require "further substantiat[ion]" on summary judgment.  Viewed in the light
14 | most favorable to the non-moving parties, there exists a question of fact whether Rite Aid
15 | was aware of the door posing a possible danger before Ms. Ogilvie was struck and
16 | injured.  This goes directly to Rite Aid's potential negligence.  (*See* MSJ at 4 (citing *Iwai*,
17 | 915 P.2d at 1093).)

18 |      Rite Aid also contends that the court should grant summary judgment on Assa
19 | Abloy's affirmative defense of contribution because that defense relies on the existence
20 | of joint and several liability.  (Assa Abloy Reply at 2.)  Ms. Ogilvie explicitly alleges that
21 | the Defendants are jointly and severally liable. (Am. Compl. ¶ 8.)  Rite Aid's argument is
22 | dependent on the court finding that Ms. Ogilvie cannot sustain her negligence claim

against it.  (Assa Abloy Reply at 2 ("[U]nless Rite Aid is somehow responsible for the specifications of negligence alleged by Plaintiff, then Assa Abloy has no claim for contribution against it.").)  Because the court finds there is a genuine issue of material fact as to Ms. Ogilvie's claim against Rite Aid, it also finds that awarding summary judgment against Assa Abloy's affirmative defense of contribution is improper.

Thus, because there is a genuine issue of material fact as to Rite Aid's knowledge of the potential danger posed by the door, Rite Aid's motion for summary judgment is denied in its entirety.

## IV.   CONCLUSION

For the foregoing reasons, the court DENIES Rite Aid's motion for summary judgment (Dkt. # 49).

Dated this 14th day of January, 2021.

JAMES L. ROBART
United States District Judge