UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARJORIE OGILVIE, | CASE NO. C18-0718JLR |
| Plaintiff, | ORDER |
| v. | |
| THRIFTY PAYLESS, INC., et al., | |
| Defendants. | |

## I.  INTRODUCTION

Before the court is Defendant Assa Abloy Entrance System US, Inc.'s ("Assa Abloy") motion for summary judgment.  (MSJ (Dkt. # 69).)  Plaintiff Marjorie Ogilvie and Defendant Thrifty Payless, Inc. ("Rite Aid") both oppose the motion.  (Rite Aid Resp. (Dkt. # 72); Ogilvie Resp. (Dkt. # 74).)  The court has considered the motions, the parties' submissions in support of and in opposition to the motions, and the applicable

//

//

ORDER - 1

law. Being fully advised,[1] the court GRANTS Assa Abloy's motion for summary judgment.

## II. BACKGROUND

The court laid out the background of this case in its previous order on Rite Aid's motion for summary judgment. (*See* 1/14/21 Order (Dkt. # at 2-4).) It lays out the facts most relevant to the instant motion below.

**A. Factual Background**

On the morning of August 29, 2015, Ms. Ogilvie was approaching a Rite Aid in Arlington, Washington ("the Store"), when the sidelite[2] of the Store's automatic door flung open and struck her in the head. (Am. Ogilvie Resp. (Dkt. # 55), Ex. A ("Ogilvie Decl.") ¶¶ 1-2.) Ms. Ogilvie fell backward, landed on the pavement, and sustained several injuries. (*Id.* ¶¶ 3-4.) The door in question was an automatic sliding door with a sidelite on each end. (Martin Decl. (Dkt. # 50) ¶ 3.) While the door does not normally open by swinging in or out, there is a breakaway mechanism that allows the door to swing open in emergency circumstances. (*Id.* ¶ 4.)

At the time of the incident, Rite Aid contracted with Assa Abloy to perform general maintenance at the store and to respond to maintenance requests regarding the door. (10/2/20 Lancaster Decl. (Dkt. # 51) ¶ 3, Ex. 2; Goldman Decl. ¶ 4, Ex. 3 ("Service

---

[1] Assa Abloy requests oral argument (*see* MSJ at 1), but the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Sidelites for automatic sliding doors are the glass panes on either side that the door slides behind when it opens in its normal fashion. (*See* Goldman Decl. (Dkt. # 70) ¶ 11, Ex. 10.)

Agreement").) Assa Abloy would conduct planned maintenance once a year after Rite Aid issued a work order for that maintenance. (Goldman Decl. ¶ 3, Ex. 2 ("Flock Dep.") 23:21-24:21.) Assa Abloy states that the last time it provided maintenance to the door was September 18, 2014. (MSJ. at 3; *see also* Flock Dep. 25:1-26:4.) Rite Aid points to a scheduled work order that it reported on August 1, 2015 in which Assa Abloy "committed to work related to the door not being ANSI complaint [sic]." (Rite Aid Resp. at 3; Goldman Decl. ¶ 6, Ex. 4 ("Work Order").) According to Assa Abloy, "[i]t appears that the date on this work order is likely incorrect . . . ." (MSJ at 3 n.3.)

At the time of the September 18, 2014, maintenance visit, Assa Abloy discussed the door's daily safety checklist with Rite Aid. (Goldman Decl. ¶ 2, Ex. 1 ("Myers Dep.") at 20:15-21:2.) This daily safety checklist instructed Rite Aid to conduct a series of minimum safety checks on the door every day. (*Id.*; Goldman Decl. ¶ 6, Ex. 5 ("Daily Safety Checklist") at 3.)

The parties all agree that there was a windstorm in the Seattle area on August 29, 2015, and that a gust of wind appears to have blown the sidelite into Ms. Ogilvie's head. (*See* MSJ at 4, 5; Rite Aid Resp. at 3; Ogilvie Resp. at 1, 5.)[3]

//

//

---

[3] Assa Abloy contends that "August 29, 2015 was the greatest windstorm on record in the Seattle area in history, with winds of 50-65 MPH." (MSJ at 4 (citing Goldman Decl. ¶¶ 8-9, Exs. 7-8).) The court notes that the exhibit submitted by Assa Abloy reports that this was "the greatest August windstorm on record" not the greatest overall windstorm recorded in the area, and that wind speeds "were on par with some of the stronger storms Western Washington typically receives in the late fall and winter . . . ." (Goldman Decl. Ex. 7 at 1, 4; *see also id.* Ex. 8 at 20 (describing "strongest August windstorm").)

**B.     Previous Motion for Summary Judgment**

This is the second motion for summary judgment in this case.  In October 2020, Rite Aid filed a motion seeking summary judgment because Ms. Ogilvie alleged the door was improperly designed, manufactured, or installed, and Rite Aid had done none of these three actions.  (Rite Aid MSJ (Dkt. # 49) at 3.)  The court denied Rite Aid's motion because Ms. Ogilvie brought her suit against Rite Aid and Assa Abloy based on a theory of negligence and premises liability and there were genuine issues of material fact as to whether or not Rite Aid had notice of the potential danger posed by the door.  (1/14/21 Order at 7-8.)

### III.     ANALYSIS

Assa Abloy contends that it is entitled to summary judgment because it did not owe a duty to Ms. Ogilvie and thus cannot be found negligent.  (MSJ at 6-8.)  The court first lays out the relevant legal standard before addressing Assa Abloy's arguments.

**A.     Legal Standard**

Summary judgment is appropriate if the evidence viewed in the light most favorable to the non-moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016).  A fact is "material" if it might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the

//

non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250

**B.   Existence of a Duty**

Ms. Ogilvie's brings her suit against Assa Abloy based on a theory of negligence and premises liability. (*See* Am. Compl. (Dkt. # 21) ¶ 8 (alleging Ms. Ogilvie suffered injuries "due to [Rite Aid and Assa Abloy's] negligence and premises liability," and that Defendants are jointly and severally liable).) She specifically alleges that Assa Abloy "designed and/or manufactured and/or installed or had installed the sliding glass door that injured [Ms. Ogilvie]" and that "these three things were done in a negligent and/or improper and or grossly negligent manner . . . ." (*Id.* ¶¶ 6-7.) Assa Abloy provides uncontested evidence that it did not design, manufacture, or install the door. (Myers Dep. at 8:16-23; Myers Decl. (Dkt. # 71) ¶¶ 4-7; *see generally* Ogilvie Resp. (not contesting

these facts); Rite Aid Resp. (same).) It also contends that it did not owe a duty to patrons of the Store because it did not own, posses, or control the Store; was not at the Store on a daily or regular basis; and only came to the Store when Rite Aid requested it to be there. (MSJ at 7.) Both Ms. Ogilvie and Rite Aid oppose Assa Abloy's motion, and the court addresses each parties' arguments below. (*See* Ogilvie Resp.; Rite Aid Resp.)

1. Ms. Ogilvie's Response

Ms. Ogilvie presents three arguments against Assa Abloy's motion. She argues that (1) she is entitled to an inference of negligence under the doctrine of *res ipsa loquitur*, (2) granting Assa Abloy's motion would be inconsistent with the court's previous order, and (3) Assa Abloy could be found negligent for failing to provide notice of the door's breakaway function. The court analyzes each of her arguments in turn.

First, Ms. Ogilvie argues that she is entitled to an inference of Assa Abloy's negligence due to the doctrine of *res ipsa loquitur*.[4] (Ogilvie Resp. at 2-3.) Under *res ipsa loquitur*, a plaintiff is entitled to an inference of negligence if three elements are met:

> (1) the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff.

*Tinder v. Nordstrom, Inc.*, 929 P.2d 1209, 1212 (Wash. 1997).

---

[4] While her complaint asserts a theory of negligence and premises liability against both Defendants, Ms. Ogilive raises no arguments regarding premises liability in her response to Assa Abloy's motion. (Am. Compl. ¶ 8; *see generally* Ogilvie Resp.)

1  "*Res ipsa loquitur* is 'ordinarily sparingly applied, in peculiar and exceptional
2  cases, and only where the facts and the demands of justice make its application
3  essential.'" *Nguyen v. City of Seattle*, 317 P.3d 518, 527 (Wash. Ct. App. 2014) (quoting
4  *Curtis v. Lein*, 239 P.3d 1078, 1081 (Wash. 2010)).  Thus, Washington courts have
5  declined to apply it in a variety of situations.  *See Tinder,* 929 P.2d 1209 (malfunctioning
6  escalator); *Curtis*, 239 P.3d 1078 (collapsing dock); *A.C. ex rel. Cooper v. Bellingham*
7  *School Dist.* 105 P.3d 400 (Wash. Ct. App. 2004) (teacher striking student with piñata
8  bat); *Jackass Mt. Ranch, Inc. v. S. Columbia Basin Irr. Dist.*, 305 P.3d 1108 (Wash. Ct.
9  App. 2013) (landslide caused by water seepage from irrigation wasteway).

10  Washington law recognizes three categories of situations where the first prong of
11  *res ipsa loquitur* is satisfied.  *Id*. at 1212 (citing *Hughes v. King County*, 714 P.2d 316,
12  320 (Wash. Ct. App. 1986)).  The first is if the act that resulted in the injury "is palpably
13  negligent, such as [a doctor] leaving foreign objects in a patient." *Id*.  The second occurs
14  "when general experience teaches that the result would not be expected without
15  negligence." *Id*.  The third is if "proof by experts in an exotic field creates an inference
16  that negligence caused the injuries." *Id*.

17  Ms. Ogilvie does not refer to any facts demonstrating "palpable negligence" or
18  submit any proof by experts that would support an inference that negligence caused the
19  injuries.  (*See* Ogilvie Resp. at 3.)  The court must presume, then, that she intends to
20  invoke the second category of situations in which *res ipsa loquitur* may apply.  But her
21  argument in support is comprised of two sentences that assert that her injury must be the
22  result of negligence because otherwise "a flood of cases would overwhelm courts in

regions of the country where extreme windstorms such as the one we had in Seattle in [sic] the norm." (*Id.* (citing no authority or facts).)

In contrast to Ms. Ogilvie's unsupported assertion, Assa Abloy provides uncontested evidence that it did not design, manufacture, or install the door. (Myers Dep. at 8:16-23; Myers Decl. (Dkt. # 71) ¶¶ 4-7.) It also provides uncontested evidence that, per its service agreement with Rite Aid, it provided annual maintenance on the door and responded to requests for repairs on an as-needed basis. (Flock Dep. 23:21-24:21; Service Agreement.) Ms. Ogilvie also does not contest Assa Abloy's assertions that the door met all applicable safety standards and requirements or that the door's breakout function, which allowed the sidelites to be pushed open, was required in order to meet fire code and ADA requirements.[5] (*See generally* Ogilvie Resp.; Myers Decl. ¶¶ 7-8.) Neither Rite Aid nor Ms. Ogilvie allege that Assa Abloy failed to perform any of its obligations to maintain the door. (*See generally* Am. Compl.; Ogilvie Resp.; Rite Aid Resp.)

Based on these uncontested facts, the court finds that Ms. Ogilvie may not properly invoke *res ipsa loquitur* against Assa Abloy. The incident in question is not, by its nature, of a kind that would only occur had Assa Abloy been negligent. *See Tinder*, 929 P.2d at 1212. Thus, this is not one of the "peculiar and exceptional cases" in which *res ipsa loquitur* applies. *See Nguyen*, 317 P.3d at 527.

---

[5] Indeed, in her expert disclosures Ms. Ogilvie lists Mr. Myers as an expert witness in the door's function who will testify that "[t]he wind has the ability to blow out the sidelites as it did on the day of the incident . . . and this is how the door is designed to function." (Ogilvie Expert Disclosures (Dkt. # 68) at 4.)

1    Second, Ms. Ogilvie argues that, because the court previously found that genuine issues of material fact existed in regard to her claim against Rite Aid, "it would be improper to allow Assa Abloy to escape liability by relying on somewhat similar defenses as Rite Aid." (Ogilvie Resp. at 4.)  However, the genuine issue of material fact that Ms. Ogilvie references is whether Rite Aid was on notice of the door's danger to patrons because it had blown open on August 29, 2015, before Ms. Ogilvie arrived at the store.  (1/14/21 Order at 7-8.)  She makes no argument connecting this issue of material fact to Assa Abloy's alleged liability, and the court sees no reason why its previous ruling should weigh against Assa Abloy's instant motion.  (*See generally* Ogilvie Resp.)

    Finally, in a two-sentence paragraph devoid of any citations to the record or law, Ms. Ogilvie contends that if *res ipsa loquitur* does not apply, Assa Abloy "could be found negligent for failing to provide proper notice of the door's break-out [sic] function to Rite Aid." (*Id*. at 4.)  She does not explain this theory of liability in more detail in any of her filings or cite any law in support of it.  (*See* Am. Compl.; Ogilvie Resp.; *see generally* Dkt.)  This theory also appears to be directly contradicted by her arguments against Rite Aid's motion for summary judgment, where she contended that "Rite Aid employees knew about the emergency breakout function of the door since the inspection form noted the function, and the form was signed by Rite Aid employees." (Ogilvie Resp. to Rite Aid MSJ (Dkt. #53) at 5.)  The court will not allow Ms. Ogilvie to allege this new theory of liability at the summary judgment stage when she provides no supporting facts and has recently argued directly against this theory.  *See Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1292 (9th Cir. 2000) (refusing to allow plaintiff to

adopt new legal theory at summary judgment stage); *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992(9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings.").

### 2. Rite Aid's Response

Rite Aid contends that Assa Abloy cannot avoid premises liability "merely because it was not present at the time of the incident." (Rite Aid Resp. at 4.) In support, it cites *Kamla v. Space Needle Corp.*, 52 P.3d 472, 474 (Wash. 2002), for the proposition that non-employee agents may be held liable for injuries that occur on a premises. (*Id*. .) In *Kamla*, a contractor setting up a New Year's Eve fireworks display was injured when a moving elevator snagged his safety line. *Kamla*, 52 P.3d at 474. *Kamla* involved the duties owed by a landowner to a contractor's employee when that employee was working on a jobsite controlled by the contractor at the time of the injury. *See id*. Rite Aid makes no attempt to explain how *Kamla* is relevant in this case and the court fails to see how it supports Assa Abloy's potential liability. Rite Aid provides no other legal authority to support its argument that Assa Abloy is liable under a theory of premises liability. (*See generally* Rite Aid Resp.)

Rite Aid also argues that because Rite Aid contracted with Assa Abloy to inspect and maintain the door and ensure that it complied with industry standards, "any issues with the door were under the purview of Assa [Abloy]." (Rite Aid Resp. at 4.) But, like Ms. Ogilvie, Rite Aid does not contest that the door met all applicable safety standards and requirements, or that the door's breakout function was required in order to meet fire code and ADA requirements. (*See generally* Rite Aid Resp.) Indeed, Rite Aid relies on a

declaration from an architect who states that Assa Abloy "serviced and maintained [the door] in a manner and frequency that is consistent with applicable standards." (Martin Decl. ¶ 7.) In the absence of any specific facts or allegations that Assa Abloy inspected, repaired, or ensured compliance in a negligent manner, Rite Aid's argument appears to be the same as Ms. Ogilvie's: an inference of negligence on the part of Assa Abloy can be drawn from the circumstances of the incident. As the court describes above, this doctrine is known as *res ipsa loquitur*, and the record does not support its application against Assa Abloy. *See supra* § III.B.1. Thus, Rite Aid's arguments against Assa Abloy's motion are unavailing.

In sum, Assa Abloy has demonstrated that the Ms. Ogilvie lacks evidence of an essential element of her negligence claim against it and it is, therefore, entitled to judgment as a matter of law. *See Nissan Fire*, 210 F.3d at 1106; *Celotex*, 477 U.S. at 324. Accordingly, the court GRANTS Assa Abloy's motion for summary judgment.[6]

//
//
//
//
//
//

---

[6] Assa Abloy also argues that the windstorm that blew open the door causing it to strike Ms. Ogilvie was an "Act of God," and therefore outside the realm of foreseeability. (*Id*. at 8.) Because the court finds that Assa Abloy is entitled to summary judgment based on its arguments regarding the existence of a duty, it does not reach the question of whether the windstorm in question was an "Act of God."

ORDER - 11

## IV. CONCLUSION

For the foregoing reasons the court GRANTS Assa Abloy's motion for summary judgment (Dkt. # 69).

Dated this 26th day of April, 2021.

*[signature]*

JAMES L. ROBART
United States District Judge